(60 App. Div. 168.)

### KEEGAN et al. v. SMITH et al.

(Supreme Court, Appellate Division, First Department. April 29, 1901.)

1. ADMINISTRATORS—ACTION ON BOND—BURDEN OF PROOF.

   The surety on the bond of an administrator, to escape liability on account of the administrator's failure to obey the decree of the surrogate charging him with the debt he owed intestate, has the burden of showing that the administrator could not have paid the debt.

2. SAME—NECESSITY OF FINDING.

   It not being necessary, to sustain judgment for plaintiff in action on the bond of an administrator, who had failed to comply with decree of the surrogate charging him with the amount of his debt to intestate, to find that he was solvent or able to pay the debt, though if it was found that he was insolvent the surety would not be liable, the judgment will not be reversed, though the court refused to find on the question of solvency, where there is evidence which would have sustained a finding, if made, that he was solvent.

   O'Brien, J., dissenting.

Appeal from appellate term.

Action by James Keegan and others against John Smith, impleaded. From determination of the appellate term (67 N. Y. Supp. 281), reversing judgment of the general term of city court of the city of New York (64 N. Y. Supp. 1117), which affirmed a judgment of the trial court for plaintiffs, plaintiffs appeal. Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Denis McMahon, for appellants.
George S. Hamlin, for respondent.

RUMSEY, J. The action was brought by the next of kin of Jane Keegan upon the bond of her administrator. The administrator rendered his account, which had been settled, and a decree of the surrogate entered establishing his liability towards the estate. By that decree he was charged with the amount of three judgments recovered by his intestate against him in her lifetime, which he had not paid. After the decree had been entered, a transcript was filed in the county clerk's office, an execution was issued against the administrator, which was returned unsatisfied, and then this action was brought against his surety upon the bond. The case has been twice tried. Upon the first trial it was held by the court below that the decree of the surrogate settling the accounts of the administrator was not conclusive upon the surety, and for that reason the complaint was dismissed. Upon appeal to this court the judgment was reversed, and a new trial ordered, for the reason that the decree was conclusive upon the administrator, and the

court erred in holding to the contrary. 24 App. Div. 25, 49 N. Y. Supp. 93.

Upon the trial from which this appeal is taken, judgment was recovered by the plaintiffs for the amount of the debt of the administrator due to the intestate. The defendant claimed that, the administrator being insolvent and not being able to pay the judgments, the surety was not liable for them, and for that reason the plaintiffs should not recover in this action. That question was not presented upon the former trial. It was, however, litigated at the trial term of the city court upon this trial. The city court did not pass in terms upon the question whether the administrator was insolvent, but did find that he had been charged with the amounts of these judgments by the surrogate in the decree rendered against him, and as a conclusion of law found that, the administrator having been charged with these amounts, the surety was liable for his failure to pay. That judgment was affirmed at the general term of the city court, but it was reversed by the appellate term, for the reason that the case was destitute of a finding that the administrator was able to pay the judgments, and in the absence of this essential fact they held that the judgment could not be sustained. It was held in that court that a mere adjudication of the surrogate that the administrator was liable to the estate did not establish the liability of the surety, and a breach of the bond of the surety was not established, unless it was shown that the administrator could have paid the debt, or that by the exercise of due diligence he could have collected the same. So the question presented upon this appeal is whether, when an administrator is charged by the surrogate with the amount of a debt he owes the intestate, the decree thus charging him is evidence, conclusive or otherwise, against the surety, or whether the person who seeks to recover against the surety because of the failure of the administrator to obey the decree of the surrogate is bound to show, not only that the decree was made, but that it was correct, before he is entitled to recover. In other words, is it the duty of the person insisting upon the conclusiveness of the decree to show the correctness of it, or is the correctness to be assumed, and the burden put upon the surety to attack it in a case where he is permitted to do so by the law?

Prima facie the decree of the surrogate is conclusive. McMahon v. Smith, 24 App. Div. 25, 49 N. Y. Supp. 93. The item for which the administrator was charged in this case was a debt due from him to the intestate, which was evidenced by three judgments. The statute requires that for any just claim which the intestate has against the administrator he shall be liable as for so much money in his hands at the time the debt or demand becomes due, and shall distribute the same in payment of the debts and legacies as part of the personal estate of the deceased. 2 Rev. St. p. 84, § 13. It has been held that upon the accounting of the administrator it is the duty of the surrogate, under this direction of the statute, to charge the administrator with the amount of his debt as so much money in his hands. Baucus v. Stover, 89 N. Y. 1. But the court said in that case that, while the debt must be treated as money in

his hands, it did not for all purposes stand upon the same footing as though he had received that amount of money. If wholly unable to pay the money in pursuance of the decree, he could not be punished for contempt, as he could be had the money actually been received from some other debtor. After the case of Baucus v. Stover had been decided by the court of appeals, an action was brought by a creditor against the executor and the surety upon his bond to recover for the failure of the executor to comply with the direction of the decree to pay over the money. It was made to appear in that action that the executor was at all times insolvent and unable to pay, and the court held that, because he was thus insolvent and unable to obey the decree of the surrogate, the surety was not liable upon his bond for his failure to pay over the money, and the complaint was dismissed. The judgment was affirmed by the general term (Baucus v. Barr, 45 Hun, 582), and it was further affirmed by the court of appeals upon the opinions there reported. 107 N. Y. 624, 13 N. E. 939. The result of the cases is that, although the surrogate is bound to charge the administrator with whatever debt is due from him to the intestate as so much money in his hands for distribution, yet, when the sureties are sought to be made liable for his failure to pay the money, they are at liberty to show that he was unable to pay it, and thereby excuse his failure to obey the decree of the surrogate. But it is quite clear from the reading of the opinions in that case that not only is the administrator presumptively liable for the debt due from him as for so much money in his hands, but that the surety can only release himself from the liability imposed upon him for the default of the administrator by showing that as a matter of fact the administrator was not able to pay, and so was not guilty of a default.

The burden of the proof is upon the person asserting the inability to pay. When, therefore, an action is brought against a surety upon his bond after the return of an execution unsatisfied, all that it is necessary for the plaintiff to do is to prove the decree of the surrogate in the proper way and the other essentials necessary to charge the surety; and, if the surety seeks to relieve himself from the liability which is prima facie imposed upon him, the duty is upon him to show that although presumptively the administrator is chargeable with the debt as for so much money in his hands, and has been so charged in the decree, yet as a matter of fact he cannot pay it, and he is not guilty of a default, and that, therefore, the surety is not liable. This seems to have been the view taken by the defendant's attorney in this case, because he alleges as an affirmative defense that the administrator was insolvent and unable to pay. As it was necessary for him to allege and prove that fact, the judgment will not be reversed, unless the fact was proved. There was no necessity for the learned court at the trial term to make any finding upon this point for the purpose of enabling the plaintiff to recover. All that was required to be found in that respect was the entry of the decree of the surrogate and the performance of the other conditions which the statute requires in order to establish the default of the surety. Therefore, when this finding of fact had

been made, the plaintiff was entitled to recover, without any further finding as to the solvency of the administrator.

It appeared that, when the accounts of the administrator were pending before the surrogate, objections were filed to it, and the amount of the liability was litigated. The matter was referred to a referee, and upon the testimony he found that the administrator was liable for the amounts of the judgments, and that he should have accounted for them as debts due the estate from himself. The learned court at the trial term found the fact as to the contest, and found, further, that the decree of the surrogate determined that the administrator should have accounted for the judgments as debts due to the estate, "as he was able to pay them," and he was accordingly charged with them. It is claimed by the defendant that the referee did not find that the administrator was able to pay this debt, and that is true; but as the referee found, and as the surrogate confirmed the finding, that he should have paid this debt, the presumption arose that he was able to pay, and therefore the court at the trial term did not err in stating that presumption in his finding of fact. Except for that finding, the court did not find either way upon the question of the insolvency of the administrator, although requested so to do. But the court refused to make any finding upon that point. Such a finding was not necessary to sustain the judgment; but, if it had been, the rule is settled that the evidence may be referred to, to see whether there was sufficient proof to warrant it, although it was not made, and, if there is sufficient, the judgment will be sustained, although the finding is not actually made by the court. Chubbuck v. Vernam, 42 N. Y. 432; Valentine v. Conner, 40 N. Y. 248. But, while the court is at liberty to examine the evidence to see whether there was sufficient proof to sustain the decision, it is not at liberty to examine the evidence to see whether there was testimony to supply a finding to reverse the judgment. Foundry Co. v. Hersee, 103 N. Y. 25, 9 N. E. 487. So that, even if it were necessary for the court to have found that the administrator was not in fact able to pay these judgments, yet, if he did not, we may examine the case to see whether there was evidence that he was actually able to pay them.

Upon an examination of the case it is quite apparent that there was evidence which was sufficient to warrant the court in making such a finding, if he had seen fit to do so. Although the administrator himself testified that all his property had been sold before the death of the intestate, and had gone to pay other debts, except the sum of $400, which he had given to his wife and had used to live on, yet there was evidence given by James Keegan to the effect that after this time Michael Keegan, the administrator, was in fact the owner of several thousand dollars, which was in the savings bank, and of a horse, which he sold for several hundred dollars, which he gave to his wife. So the court would not have erred had it found that the administrator was able in fact to pay these judgments after the death of his sister, the intestate. But it was not necessary for the court to so find. The burden of the proof was upon the surety. The decree was conclusive upon him, and he was liable for the de-

fault of the administrator, unless he showed that the administrator was unable to pay, and consequently unable to perform the decree of the surrogate as directed. If he desired to prove that fact, he must obtain a finding, and, unless there was a finding in that regard, there was nothing to excuse him from his liability upon the decree of the surrogate. So the learned court below was in error in holding that the burden of showing the ability of the administrator to pay was upon the plaintiff, except so far as a presumption of that ability arose from the decree of the surrogate. It is quite true that the defendant asked for a finding that the administrator was insolvent, and that finding he did not succeed in getting.

If the question of fact is before us for decision, all that we can say is that there was evidence which might have warranted the court below in finding that the administrator was not only not in fact insolvent, but was able to pay, but had not seen fit to do so. For that reason we cannot say that there was error in the refusal of the court to find the fact of the administrator's insolvency, and accordingly the judgment below was correct, and the determination of the appellate term reversing the judgment below should itself be reversed, and the judgment below affirmed, with costs.

VAN BRUNT, P. J., and PATTERSON and INGRAHAM, JJ., concur.

O'BRIEN, J. (dissenting). The action was to enforce against a surety a decree made by the surrogate of New York county on an accounting by Michael Keegan, as administrator of the estate of Jane Keegan, deceased, pursuant to section 2607 of the Code of Civil Procedure. The decree upon the accounting charged the administrator with a balance of cash, amounting to $254.98, and with three judgments recovered against him by decedent in her lifetime, amounting, with interest, to $821.53, and adjudges that the administrator should have accounted for such judgments as debts due from him to the estate, and should be personally charged therewith. As correctly stated in the opinion of the general term of the city court:

"The issues herein, with the exception of one, have been discussed and decided by the appellate division on a former appeal. See McMahon v. Smith and Keegan v. Smith, 24 App. Div. 25, 49 N. Y. Supp. 93. The defense or issue which constitutes the one exception above mentioned is set up in an amended answer, interposed after the decision of the above-cited cases, and is as follows: That the surety of the administrator is not liable for the three judgments obtained by the administrator's intestate in her lifetime against the administrator, because the latter was at the time of the death of the intestate, and ever since has been, insolvent and wholly unable to pay said indebtedness. The liability imposed by 2 Rev. St. p. 84, § 13, is as follows: 'Any just claim which a testator had against one named as executor of his will [or who is appointed administrator] shall be included in the inventory, "and such executor shall be liable for the same as for so much money in his hands, * * * and he shall apply and distribute the same in the payment of debts," etc. * * * An executor, although insolvent at the time of his appointment, is bound to account for a debt so due from him, and should be charged therewith, on settlement of his accounts, as for so much money in his hands.' It has been held that under this statute the liability of an executor or administrator is a qualified one, and that, if the proofs show that the executor was wholly unable to pay his debt to the estate for want of property, he cannot

be punished for contempt, nor would he be guilty of embezzlement. Baucus v. Stover, 89 N. Y. 5; Baucus v. Barr, 45 Hun, 582, affirmed 107 N. Y. 624, 13 N. E. 939."

No fault, we think, is to be found with this statement, and, had it been followed upon the trial, the error into which the trial court fell in disposing of the defenses interposed would have been avoided, and there would be no necessity for a new trial. To sustain the defense that the administrator at the time of the death of the intestate was, and ever since had been, insolvent, evidence was introduced on the trial. The administrator testified:

"Since the death of my sister the largest salary I ever commanded was $15 a week. Outside of my salary I have not, at any time since the death of my sister, Jane Keegan, owned any money or property. I have a family,—a wife and six children. I have been in the habit, since the death of my sister, of applying my salary to the support of my family. Since the death of my sister I have not at any time been able financially to pay those judgments which are in evidence, and which were obtained against me by her, or any part of them."

.On cross-examination the fact was elicited that prior to the death of his sister he had owned a liquor store at the corner of Lexington avenue and Thirty-Second street, which had been sold some five months before his sister's death for $5,250, part in cash and part in notes. The greater portion of this, he testified, went to pay the debts which he then owed, and, besides a horse, which he said was sold on a judgment for $450, it did not appear that he had any money or property. The attempt to show that part of the sum received from the sale went into his wife's bank account was met by a denial from him. After the defendant rested, on this proof of insolvency and inability to pay, the administrator's brother—who was one of the plaintiffs, and who was examined on his own behalf—testified that he saw the wife's bank account and other books after the sale, and "the bank book amounted to $2,000 or $3,000. It was in his wife's name and in one of his children's name." It is true he states that the only means the wife had was such as she got from her husband; but, outside of a check, which he states was between $700 and $800, received upon the sale of the horse, which, he says, was sold to a man in New Jersey, but which the administrator testified was sold on execution, there is no evidence that any of the money, either upon the sale of the horse or upon the sale of the liquor store five months before the death of the sister, went into the wife's bank account. But, if we should assume that the results of the sale of the store were deposited in her account and thus became her property, it would be doubtful, to say the least, if it could be reached by subsequent creditors of the husband, because, in the absence of proof of the existence of debts, or of an intent to defraud existing creditors, there was nothing to prevent the husband from making a gift of the money to his wife.

It is unnecessary, however, to determine these questions, as they are not before us; reference being had to this testimony merely for the purpose of showing that the defendant undertook to establish his defense by the production of evidence tending to prove that the administrator, at the time he became such, was insolvent, and from that time on, during the period while he was acting as administrator, was

never· financially able· to pay the judgments which his sister had re-
covered against him, and this was met by the plaintiff's evidence tend-·
ing to show that he was able to do so.   All of this testimony was
entirely disregarded by the learned trial judge, as shown by the pro-
ceedings upon the trial; for, as the case was tried without a jury,
and each side proposed findings of fact and conclusions of law, which
were disposed of and settled, and the decision rested upon the find-
ings of fact and conclusions of law as settled, we are enabled to see
exactly the ground upon which the decision was based.   The learned
trial judge refused to find, as proposed by the defendant, that the evi-·
dence showed that the administrator had been insolvent and unable
to pay, and in his conclusions of law found:

"(1) That the defense concedes in his argument on this trial that the sur-
rogate of New York had jurisdiction to make the decree of August 29, 1895,
but seeks to attack it in an action by the next of kin for its enforcement.   I
hold that this cannot be done.   The decree, while it stands, is conclusive,
however hard its provisions may seem.   (2) I therefore render·judgment for
plaintiffs against John Smith for $639.20.   *   *   *"

There was, therefore, no adjudication, based on the oral evidence
adduced upon the trial, to which we have referred, as to whether the
administrator was or was not financially able to pay the judgment
against him, although the learned trial judge states in his sixth find-
ing of fact that the report of the referee upon the accounting had
found "that the said administrator should have accounted· for said
judgments as debts due from him to said estate, as he was able to
pay them."   In this statement, however, the court fell into error, be-
cause the referee made no finding in regard to the ability of the ad-
ministrator to pay the judgment, and the words used by the court, "he
was able to pay them," are not contained in the referee's report,
either in this or in any other connection.   Thus the issue presented
by the defense on the trial, upon which testimony was adduced, was
not considered by the learned trial judge, and thus the defense was
practically eliminated by the theory upon which he proceeded, and to
which we have already adverted, that the decree of the surrogate was
conclusive.   At the general term of the city court practically the
same view was taken.   Although that court recognized that.the trial
court had fallen into error as to what the referee had found on the
accounting, and the judgment could not be sustained on that ground,
it took advantage of the evidence given at the trial by the brother of
the administrator, to which we have referred, and which tended to
show that the defendant had been able to pay the judgments.   Thus,
in the opinion of the general term it is said:

"There is evidence that the administrator, about five or six months before
the deceased's death, disposed of a liquor store at $5,250, and sold a horse for
about $700 to $800, and that from $2,000 to $3,000 of that money was de-
posited in his wife's name in a savings bank."

No reference was made to the evidence adduced upon the part of
the defendant to the contrary, which tended to show that the admin-
istrator had been insolvent.   The decision, however, did not rest up-
on.the sufficiency of the evidence tending to show that the defendant
was able to pay the judgments; for in the opinion it is said:

"On the former appeal (24 App. Div. 25, 49 N. Y. Supp. 93, supra) the appellate division held that this decree is conclusive upon the administrator, and also upon the surety, who is in privity with the administrator."

Thus in the general term, also, the defense of the surety was again eliminated, and he was held liable upon the theory that the decree of the surrogate was conclusive. Upon appeal to the appellate term, the error into which the trial court had fallen was pointed out, as shown by the opinion, wherein it is said:

"The statement contained in the sixth finding, that the administrator 'was able to pay them,' is without foundation."

The court then proceeded to review the law bearing upon the liability of sureties for debts due by an administrator to the estate, and correctly held that the decree of the surrogate is not conclusive upon the question of such liability, and—

"Although the executor or administrator may be adjudged to be personally liable for the debt 'as for so much money in his hands,' yet for the purpose of administration such debt 'will not for all purposes stand on the same footing as if he had actually received so much money.' "

And it was therein also correctly held that, notwithstanding the decree of the surrogate, it was proper, in an action to determine the liability of the surety, to have the question determined, if raised as matter of defense, whether or not the administrator had been financially able to pay judgments of the intestate against him.

Upon the trial of such an issue it is important to remember upon whom rests the burden of proof. To obviate the force of the decree it is necessary for the administrator and the surety to show as matter of defense that they should not be held liable as for so much money in hand because, as matter of fact, the administrator never, during his term as administrator, was financially able to pay his indebtedness to the estate. This, we think, must be the rule, for the reason that, where there is a decree of the surrogate that an executor or administrator has in his hands sums applicable to the payment of debts, etc., if a surety wants to avoid the implication as to debts owing to the estate by the executor or administrator and included in the decree, it is incumbent upon him to show that the executor or administrator never had the funds or property requisite to satisfy the obligations. In other words, a surety must prove that the executor has at all times been insolvent and unable to pay the debts owing by him to the estate; the presumption arising from the decree being that the executor did have funds in his hands sufficient to answer and satisfy the liability fixed by the decree. The duty and burden of taking this charge out of the decree, and relieving the surety from the failure of the administrator to comply therewith, is upon the one who insists that he is not bound, and, therefore, it is here upon the defendant. The decree imports that the administrator has become liable for the debts as for money in his hands, and thus his liability prima facie is the same as though he had the money actually in his possession. Certainly, if an effort was made to collect it of him by proceedings for contempt, he would be bound to show that he was insolvent; and, unless he did show that, he would have to pay as required by the decree. This, as we understand it, is precisely the rule laid down in Baucus

v. Stover, supra, and Baucus v. Barr, supra. So far as the adminis-
trator is concerned, the decree imposes an absolute duty upon him to
pay the debt. The surety is in no better position; and, unless he
can show as matter of fact that the administrator was unable to pay,
he becomes liable for the default of the administrator. This was the
position assumed by the defendant, who interposed the defense, and
undertook by evidence to show, that the administrator was insolvent
and unable to pay the judgment. The failure to note upon whom the
burden of proof rested in the first instance inadvertently led the
learned appellate term into stating that:

"A breach of the bond in suit is not established until it is shown that the
administrator was of sufficient pecuniary ability to pay the debt or that by
the exercise of due diligence he could have collected the same."

In this, as we have endeavored to point out, that court overlooked
the force and effect to be given to the decree in the first instance, and
the necessity imposed upon one who would assail such decree to af-
firmatively establish what, under the statute, could alone obviate its
binding effect,—that the administrator, because at all times without
funds and unable to pay, should not be charged and compelled to ac-
count for the debts as though he had so much money actually in hand.
We agree, however, with the appellate term that the defense inter-
posed by the surety was neither considered nor passed upon by the
trial court, and therefore we think that the conclusion reached by the
appellate term in ordering a new trial was right, and should be af-
firmed, with costs.