---

(118 App. Div. 626)

## In re ABLOWICH.

(Supreme Court, Appellate Division, First Department. April 5, 1907.)

1. ADMINISTRATORS—LIABILITY AS DEBTOR OF ESTATE.

When one accepted letters of administration, he became chargeable with the amount in which the firm of which he was a member was indebted to the estate on notes and checks as that much money in his hands for the usual purposes of administration.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, § 302.]

2. SAME—EFFECT OF REVOCATION OF LETTERS.

An administrator was not released from liability to have his account charged with the amount in which the firm of which he was a member was indebted to the estate on notes and checks, because his letters were revoked before the estate was administered and he turned the notes and checks over to the successor, who accepted them.

Ingraham and McLaughlin, JJ., dissenting in part.

Appeal from Surrogate's Court, New York County.

In the matter of the account of Julius Ablowich, as original administrator of Harris Ablowich, deceased. From the decree settling same, Emanuel Blumenstiel, substituted administrator, appeals. Reversed and remitted.

Argued before PATTERSON, P. J., and McLAUGHLIN, INGRAHAM, HOUGHTON, and SCOTT, JJ.

S. Livingston Samuels, for appellant.

Arthur Furber, for respondent.

PATTERSON, P. J. I concur in the view, expressed by Mr. Justice INGRAHAM:

"That when the accounting administrator in this proceeding accepted the letters of administration issued to him, he was chargeable with the amount of that indebtedness represented by the notes and checks of the firm of which he was a member, as so much money in his hands for the usual purposes of administration."

I do not, however, concur in the view that when the letters of Julius Ablowich were revoked before the estate was administered, and he turned the notes and obligations of his firm over to his successor as administrator, and those evidences of debt were accepted by such successor, that thereby Julius Albowich ceased to be chargeable with the amount of the indebtedness of his firm to the estate. If by reason of his appointment as administrator he became chargeable with the amount of the various obligations of his firm, that was a situation in which he was placed by the law. He could not discharge himself from it by turning over the evidences of his own indebtedness to his successor; nor could his successor discharge him by the acceptance of such evidence of indebtedness. If, by his becoming administrator, the debt of Julius Ablowich to the estate is to be regarded as assets in his hands, he must be charged with such assets in his account, and can only be discharged in the manner provided by law. It seems to me that this is not a case in which the doctrine of the election of inconsistent remedies by the present administrator applies.

I think the decree of the surrogate, confirming the report of the referee, overruling the objections to the account of Julius Ablowich, should be reversed, with costs, and the proceeding remitted for further action.

HOUGHTON and SCOTT, JJ., concur.

INGRAHAM, J. (dissenting). It appeared that one Harris Ablowich died in the city of New York intestate, and on July 5, 1895, the respondent, Julius Ablowich, was appointed administrator of his estate. Subsequently, and in September, 1895, the letters issued to Julius Ablowich were revoked, and the Farmers' Loan & Trust Company was appointed temporary administrator, to whom Julius Ablowich turned over all the assets of the estate which had come into his hands. Subsequently the appellant, Blumenstiel, and another were appointed administrators, and they received the assets of the estate from the Farmers' Loan & Trust Company. Julius Ablowich accounted, pursuant to

a decree of the surrogate, on June 5, 1901. Objections to these accounts were filed by certain of the next of kin and by the substituted administrator, and the accounts and objections were sent to a referee. Subsequently the referee reported, overruling the objections both of the next of kin and of the administrator, which report was confirmed by the surrogate; and from the final decree, settling the account of the original administrator, Emanuel Blumenstiel, as administrator, appeals.

The original administrator, Julius Ablowich, was a member of a firm which consisted of himself and two sons. Among the assets of the estate of Harris Ablowich which came into the hands of the administrator were found various promissory notes and checks of this firm, amounting to a large sum, but which were disputed by the firm; it being claimed that these notes were accommodation paper. After the letters of administration were revoked, Julius Ablowich turned over these notes and checks, with the other assets of the estate, to the temporary administrator, and subsequently the substituted administrator commenced an action against the members of the firm on these notes and recovered judgment against them for the amount due. The firm of Julius Ablowich & Co. subsequently became insolvent and were adjudicated bankrupts. This copartnership was insolvent at the time of the death of the intestate, and, although they continued in business for some months thereafter, they never had assets sufficient to pay the indebtedness of the firm. In the account filed the administrator charges himself with $7,057.03, being cash received and notes and other obligations collected, which it is conceded were turned over to the temporary administrator. There was also annexed to the account a "Schedule B," which contained a statement of the property, other than money received by the accounting administrator, which had been turned over by him to the Farmers' Loan & Trust Company, the temporary administrator. Included in this were the notes and checks of the firm of which the accounting administrator was a member, aggregating more than $40,000. By the objections the substituted administrator sought to charge the accounting administrator with the amount of these various checks and notes of the firm as money in his hands for which he was bound to account. The referee found that the accounting administrator was not chargeable with the amount of these notes as money in his hands, and he was discharged from liability on the accounting, having turned over all the notes and other obligations to the temporary administrator.

The only question presented on this appeal is whether the surrogate should have charged the accounting administrator with the amount of these notes and checks as money in his hands. The intestate died on June 14, 1895, and the firm of which the accounting administrator was a member continued in business up to October, 1895, when it failed. The order revoking the letters of administration was made on the 26th day of September, 1895, before the failure of the firm. The question must, I think, depend upon the rule of the common law, and not upon the provisions of section 2714 of the Code of Civil Procedure. That provision relates solely to executors, and was designed to change the rule of the common law that the appointment by a creditor of his

debtor as his executor extinguished the debt except as to creditors, so that the executor was not bound to account for the same as assets, and to introduce a new system in reference to such an indebtedness. It was the obvious purpose of the statute, not only to save the executor's debt from extinguishment, but, in order to obviate all difficulty, doubt, and embarrassment, to cause it to be regarded as money in his hands. Baucus v. Stover, 89 N. Y. 1. The question was not before the court in Keegan v. Smith, 60 App. Div. 168, 70 N. Y. Supp. 260, as in that case the surrogate had charged the administrator on his accounting with an indebtedness that he owed to the intestate, and the action was based upon the decree of the surrogate against the administrator's surety. The propriety of the charge in the decree was not before the court, and although there was some expression in the opinion which would seem to indicate that this provision of the Code applies to administrators, as well as to executors, what was said was merely to indicate that since this provision of the Code the rule in regard to executors had been assimilated to that of administrators. But there was nothing in this provision of the Revised Statutes, which was subsequently inserted in section 2714 of the Code of Civil Procedure, that changed the rule in relation to the obligation of an administrator to account for money that he owed to the intestate at the time of the intestate's death. At common law it was the rule, as stated in Am. & Eng. Enc. of Law (2d Ed.) vol. 11, p. 787:

"If a debtor of the testator was appointed executor, the debt was extinguished; but a grant of administration to the debtor of the decedent merely suspended the remedy of the estate for a time against the debtor, and did not extinguish the debt. But the rule in equity is that a debt due from an executor or administrator is considered as having been paid to himself, and therefore he is accountable for the amount of his debt as assets in his hands."

And in the same volume (page 834):

"In the United States the equitable rule has been generally adopted by the courts, or expressly enacted by statute, and a debt due by an executor or administrator becomes, immediately on his appointment, assets in his hands. But the rule first stated is merely one of convenience, and will not be allowed to work prejudice to those beneficially interested, nor does it apply where the executor or administrator treats the debt as a subsisting obligation."

And in the same volume, at page 1203, it is said:

"The modern doctrine as to the effect of appointing a debtor of the decedent executor of his will or administrator of his estate is that payment of the debt is presumed to have been made, and the executor or administrator is chargeable in his account with the amount of the debt as cash in hand. This seems to be the invariable rule if he was solvent at any time during his term of office, and in some jurisdictions it is the rule without regard to any question of his solvency or insolvency."

In Marvin v. Stone, 2 Cow. 781, the question as to the effect of the appointment by a creditor of his debtor an executor was discussed, and the rule stated that the appointment operates as a release or extinguishment of the debt, or the action for it, upon the ground that such must have been the intention of the testator, because, by making the debtor an executor, he voluntarily destroys the only remedy or means by which the debt can be collected. The rule is universal that, when

the remedy is suspended by the act of the party entitled to it, it is destroyed forever. Attention was then called to the qualification, as universal as the rule itself, that it did not apply where the testator does not leave funds sufficient for the payment of his debts; that in such case the debt due from the executor shall be considered assets in his hands for the payment of the debts of the testator, and by considering it assets the difficulty is avoided as to the means of enforcing payment.

The reasons for the rule given in this case, while applicable to executors, do not apply to administrators, as the appointment was one by the law, and not by the intestate. As to administrators the rule is that, where a debtor of an intestate takes upon himself the administration of the estate, he will be at once charged with the amount of his indebtedness to the estate, and bound to account for such indebtedness, both as to creditors and the next of kin. But the mere fact of appointment as administrator does not of itself destroy the obligation, and the rule of law charging the executor or administrator with the amount of debts as assets in his hands is merely adopted as a method of collecting the indebtedness, as, if the rule were not adopted, it being impossible for the administrator to sue himself, there would be no method of collecting the debt. It has also been held that under the provisions of the Revised Statutes (Rev. St. [1st Ed.] pt. 2, c. 6, tit. 3, § 12), which have been re-enacted as a part of section 2714 of the Code of Civil Procedure, where the member of the firm who was appointed executor owed a debt to the testator, as the executor could not sue the firm of which he was a member, the debt should be treated as so much money in his hands for administration; and there is no reason why this rule should not apply to an administrator.

It would seem to follow, therefore, that, when this accounting administrator accepted the letters of administration issued to him, he was chargeable with the amount of this indebtedness, represented by the notes and checks of the firm of which he was a member, as so much money in his hands for the usual purposes of administration. The debt not being extinguished, the remedy being suspended, when his letters were revoked before the estate was administered, and he was required to turn over to the temporary administrator the assets of the estate in his hands, the question was presented as to whether the estate would reserve the claim upon the notes, receiving them as a part of the estate, or insist upon a claim against the accounting administrator as so much money in his hands for which he was accountable. It might well be that the firm obligations would be much more valuable to the estate than a claim against the administrator as a debtor of the estate. The fact that the administrator or executor could be charged with the amount of his indebtedness to the estate does not of itself discharge the obligation of the debtor to the estate, or affect any lien that the intestate or testator held to enforce the obligation. That was expressly held in Severhill v. Suydam, 59 N. Y. 140. The indebtedness not being discharged until actual distribution, where the letters of an administrator were revoked, the question whether he should be chargeable with the amount of this indebtedness of the firm of which he

was a member, and the estate should look to him on an accounting, or whether the obligation should be transmitted by him to his successor as a part of the estate and accepted by the succeeding administrator as such, was a question which had to be determined by the substituted administrator. The accounting administrator, acting under the decree of the surrogate, actually delivered to the temporary administrator these notes and checks as property of the estate, and they were accepted as a compliance with the decree of the surrogate revoking the letters. When letters of administration were issued, these checks and notes were turned over to the administrator. He accepted them from the temporary administrator, and commenced an action against the copartnership, including the accounting administrator, and recovered a judgment upon the notes and checks. This was an election to treat the accounting administrator as a debtor of the estate upon the notes themselves, the estate retaining this claim against the other members of the firm, which was entirely inconsistent with a right of the estate to treat the notes as paid and the amount represented by them as money in his hands belonging to the estate. Where a party has inconsistent remedies, an election of one, especially where it is prosecuted to judgment, is a bar to the other. Fowler v. Bowery Savings Bank, 113 N. Y. 450, 21 N. E. 172, 4 L. R. A. 145, 10 Am. St. Rep. 479; Terry v. Munger, 121 N. Y. 161, 24 N. E. 272, 8 L. R. A. 216, 18 Am. St. Rep. 803; Droege v. Ahrens, 163 N. Y. 466, 57 N. E. 747.

There is a distinction between a case where an executor or administrator administers the estate and distributes it among the creditors, or next of kin, or legatees, and a case where letters of administration have been issued, but are revoked before the estate is distributed. When the letters are revoked, the estate is protected by retaining the liability of the administrator in favor of his successor. The duty had not devolved, and never did devolve, upon him to administer the estate and distribute its assets among the creditors and next of kin. He accounted to his successor, the temporary administrator, by delivering all of the assets of the estate which had come into his hands, including the obligations of the firm of which he was a member, and such assets were accepted from the accounting administrator as a part of the estate. The estate could not then enforce these obligations, both against the administrator and the other members of the firm as debtors of the estate, and at the same time insist that the obligations had been paid and that the amount was in the hands of the accounting administrator for distribution; and an election to proceed against the firm upon the notes on behalf of the estate was, I think, an election of remedies, within the authorities above cited.

For this reason I think the learned surrogate correctly, held that the administrator had accounted for all the property that he had received as administrator, and passed his accounts; and the decree must therefore be affirmed, with costs.

McLAUGHLIN, J., concurs.